IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **In re:** | * | Case No. 10-12735-JFS |
| **UNITED BAPTIST MISSIONARY CONVENTION AND AUXILIARIES,** | * | (Chapter 11) |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### FIRST MARINER BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

First Mariner Bank ("First Mariner"), by its undersigned counsel, files this opposition (the "Opposition") to the Emergency Motion of Debtor for Authority to Use Cash Collateral ("Cash Collateral Motion") filed by the debtor in the above-captioned case (the "Debtor"). In support of its Opposition, First Mariner states as follows:

### Background

1. The Debtor commenced the above-captioned case by filing a petition under chapter 11 of the Bankruptcy Code on February 9, 2010 (the "Petition Date").

2. The Debtor owns, among other properties, that real property commonly known as 940 Madison Avenue, Baltimore, Maryland 21201 (the "Property").

3. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

A. *First Mariner's Loan to Debtor*

4. Prior to the Petition Date, on May 11, 2005, the Debtor executed a Deed of Trust Note in favor of First Mariner in the principal amount of $2,325,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as ***Exhibit A***, and is incorporated herein by reference.

5.  The Debtor's obligations under the Note are secured by a Deed of Trust and Security Agreement, also dated May 11, 2005, encumbering the Property (the "Deed of Trust"). A true and correct copy of the Deed of Trust attached hereto as ***Exhibit B***, which was duly recorded among the Land Records of Baltimore City, Maryland, and is incorporated herein by reference.

6.  In addition to the Deed of Trust, the Debtor further secured its obligations under the Note by executing an Assignment of Lessor's Interest in Leases (the "Assignment of Rents"), encumbering the rents derived from the Property (the "Rents"). A true and correct copy of the Assignment of Rents, which was duly recorded among the Land Records of Baltimore City, Maryland, is attached hereto as ***Exhibit C***, and is incorporated herein by reference.

7.  The Rents constitute "cash collateral" as that term is defined by 11 U.S.C. § 363(a) and, therefore, is subject to the Debtor's Cash Collateral Motion.

**B.**   *First Mariner's First Increase of Amount of Loan to Debtor*

8.  On September 14, 2006, First Mariner and the Debtor executed, among other documents, an allonge, increasing the amount of the Note to $2,625,000.00 (the "First Allonge"). A true and correct copy of the First Allonge is attached hereto as ***Exhibit D***, and is incorporated herein by reference.

9.  The Debtor's obligations under the First Allonge is secured by an Amendment to Deed of Trust, securing payment of the Note as amended by the First Allonge (the "First Amended Deed of Trust"). A true and correct copy of the First Amended Deed of Trust is attached hereto as ***Exhibit E***, which was duly recorded among the Land Records of Baltimore City, Maryland, and is incorporated herein by reference.

C.    *First Mariner's Second Increase of Amount of Loan to Debtor*

10.    On April 24, 2008, First Mariner and the Debtor executed, among other documents, a second allonge, increasing the amount of the Note to $2,670,000.00 (the "Second Allonge").  A true and correct copy of the Second Allonge is attached hereto as *Exhibit F*, and is incorporated herein by reference.

11.    The Debtor's obligations under the Second Allonge are secured by a Second Amendment to Deed of Trust, securing payment of the Note and First Allonge as amended by the Second Allonge (the "Second Amended Deed of Trust").  A true and correct copy of the Second Amended Deed of Trust is attached hereto as *Exhibit G*, which was duly recorded among the Land Records of Baltimore City, Maryland, and is incorporated herein by reference.

12.    Pursuant to the terms of the Note and the Second Allong, the Debtor is required to make consecutive, monthly payments in the amount of $18,360.28 on the first day of each month.  Monthly payments are considered late if not paid in full by the sixteenth day of the month for which each such payment is due, whereupon a late charge is assessed in the amount of 5% of the total amount of the delinquent payment.

D.    *Debtor Defaults for Nonpayment*

13.    The Debtor defaulted under the Second Allonge for nonpayment, whereupon First Mariner commenced foreclosure proceedings against the Property.

14.    The Debtor has not made a payment under the Second Allonge since June of 2009.

15.    As of the Petition Date, the amount due and owing under the Note was $2,829,429.23.  The pre-petition arrearage under the Note is $197,612.02.  In support of the foregoing, First Mariner will file its proof of claim in the near future.

16. The Debtor's Schedule A lists the Property as having a fair market value of $4,500,000.00. However, First Mariner obtained an appraisal of the Property on February 12, 2010, stating that the Property has a fair market value of $2,700,000.00. A true and correct copy of that appraisal is attached hereto as **Exhibit H**, and is incorporated herein by reference.

17. It should be noted that, although not dispositive of the value of the Property, the tax assessed value of the Property is $2,025,100.00 – an amount more in line with the aforementioned appraised value than with the Debtor's asserted value. A true and correct copy if a screen print from the Maryland Department of Assessments and Taxation evidencing the foregoing is attached hereto as **Exhibit I**, and is incorporated herein by reference.

## Standard

18. "Adequate protection, as derived from the fifth amendment protection of property interests, reconciles the competing interests of the debtor, on the one hand, who needs time to reorganize free from harassing creditors, and the secured creditor, on the other hand, who is entitled to constitutional protection for his bargained for property interest." *In re Jug End in the Berkshires,* 46 B.R. 892, 898-99 (Bankr.D.Mass.1985) (*citing* H.Rep. No. 595, 95th Cong., 1st Sess. 343-44 (1977)).

19. "The Court must ensure that, to the extent the debtor is entitled to use cash collateral, there is adequate protection of the creditor's security interest so as to maintain the 'benefit of the bargain' that the secured creditor originally made with the debtors. This requires a showing that the value of the creditor's security interest is protected and the debtor's use of cash collateral will not threaten that interest." *In re Dynaco Corp.*, 162 B.R. 389, 393 -94 (Bankr. D.N.H. 1993).

20. The concept of adequate protection is an amorphous one, but, in essence, it means that the value of a creditor's interest in the property securing the debt owed to him may not be diminished. A secured creditor may be adequately protected by (1) the transfer of cash to the creditor from other estate assets to compensate for the collateral's diminution in value; (2) the provision of a replacement lien in another asset of the estate; or (3) the grant of such other relief as will result in the creditor realizing the "indubitable equivalent" of his interest in the collateral. 11 U.S.C. § 361.

21. When the cash collateral at issue is rents, "[a]dequate protection is typically established by the fact that the cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest. Other factors are also considered such as whether or not there is equity in the property, whether the property is declining in value, and whether or not postpetition payments due the creditor are current." *In re Atrium Development Co.*, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993).

## Argument

22. Against that background, 1st Mariner objects to the use of its cash collateral for the following reasons. First, the Debtor failed to attach a budget and, therefore, leaves one to wonder whether there is a realistic prospect of reorganization. *In re Pawtuxet Valley Prescription & Surgical Center, Inc.*, 2008 WL 1990887, 2 (Bankr. D.R.I. 2008) ("If the reorganization hopes of the debtor are nothing more than wishful thinking, no useful purpose can be accomplished by allowing the debtor to use cash collateral.").

23.     Second, the Debtor fails to provide adequate protection of 1st Mariner's collateral as required by 11 U.S.C. § 363.  Although the Debtor seeks to provide adequate protection for the use of cash collateral in the form of a post-petition lien on the Debtor's assets, the Debtor seemingly has no meaningful assets to which a replacement lien can attach.

24.     Third, in as much as Debtor fails to provide 1st Mariner adequate protection, 1st Mariner objects to the use of its cash collateral to pay the Debtor's professional fees.  "As a general rule, administrative costs of a reorganization, including attorneys' fees incurred in connection with efforts to reorganize the debtor, may not be charged against the collateral of a secured creditor."  Kivitz v. CIT Group/Sales Finance, Inc. 272 B.R. 332, 334 (D.Md. 2000); see also, In re 1560 Wilson Boulevard L.P., 206 B.R. 819, 825 (Bankr. E.D. Va. 1996) ("Since it is undisputed that the funds consist entirely of rents subject to Equitable's security interest, they constitute cash collateral and cannot now be used by the debtor to pay a post-petition retainer to Holmes, Rosenberg & Doherty unless Equitable consents or the court permits such use on a proper showing of adequate protection.").

25.     As required by Local Bankruptcy Rule 9013-2, 1st Mariner Bank hereby states that no memorandum will be filed and that it will rely solely upon this Objection.

WHEREFORE, for the foregoing reasons, 1st Mariner Bank respectfully requests this Court to enter an Order:

(A) Denying the Cash Collateral Motion; and

(B) Granting such other and further relief as equity and justice may require.

    /s/ Craig B. Leavers
Craig B. Leavers, Bar No. 26914
HOFMEISTER & LEAVERS, LLC
409 Washington Avenue, Ste. 210
Towson, Maryland 21204
(410) 832-8822 ext. 208
Facsimile (410) 832-8833
craig@hhlawyers.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of February, 2010, a copy of the foregoing was served on the parties listed below by first-class mail, unless said party is a registered CM/ECF participant and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

| | |
|---|---|
| Adam M. Freiman, Esq.<br>Jeffrey M. Sirody, Esq.<br>Sirody, Freiman & Feldman<br>1777 Reisterstown Road, Ste. 360 E<br>Baltimore, Maryland 21208<br>*(Attorneys for the Debtor)* | Office of the United States Trustee<br>101 West Lombard Street, Ste. 2625<br>Baltimore, Maryland 21201 |

    /s/ Craig B. Leavers
Craig B. Leavers